UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-62209-MOORE/VALLE

LOUIS VUITTON MALLETIER,

    Plaintiff,

v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE
ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

THIS CAUSE came before the Court upon Plaintiff Louis Vuitton Malletier's ("Plaintiff") Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "Motion") (ECF No. 6 at 16). United States District Judge K. Michael Moore has referred the Motion to the undersigned for a Report and Recommendation on Plaintiff's request for a preliminary injunction (ECF No. 15 at 11). Accordingly, having held an evidentiary hearing on the matter, and having considered the Motion, the record in this case, the applicable law, and being otherwise fully advised, the undersigned respectfully recommends that the request for a preliminary injunction be **GRANTED** for the reasons stated below.

**I.    BACKGROUND**

Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Louis Vuitton Marks"): Trademark No. 1,794,905, registered on September 28, 1993; Trademark No. 2,177,828, registered on August 4, 1998; Trademark No. 2,181,753, registered on August 18, 1998;

Trademark No. 2,361,695, registered on June 27, 2000; Trademark No. 2,399,161, registered on October 31, 2000; Trademark No. 2,773,107, registered on October 14, 2003; Trademark No. 3,107,072, registered on June 20, 2006; Trademark No. 4,192,541, registered on August 21, 2012; Trademark No. 4,530,921, registered on May 13, 2014; Trademark No. 5,477,535, registered on May 29, 2018.  *See* (ECF No. 6-2 ¶ 4) (Declaration of Hadrien Huet) ("Huet Decl."). The Louis Vuitton Marks are used in connection with the manufacture and distribution of high-quality goods. *Id.*

Defendants are six individuals, business entities, and unincorporated associations identified on Schedule A of this Order.  Plaintiff alleges that Defendants, through Internet-based e-commerce stores, have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of one or more of the Louis Vuitton Marks.  *See* Huet Decl. ¶¶ 9, 12-13; *see also* (ECF No. 6-4 ¶ 4) (Declaration of Kathleen Burns) ("Burns Decl.").

On November 20, 2023, Plaintiff filed its Complaint against Defendants alleging: (i) trademark counterfeiting and infringement, pursuant to 15 U.S.C. § 1114; (ii) false designation of origin, pursuant to 15 U.S.C. § 1125(a); (iii) common law unfair competition; and (iv) common law trademark infringement.  *See generally* (ECF No. 1) ("Compl."); *see also* (ECF No. 31) (Amended Complaint, filed 1/18/2024) (alleging same causes of action against Defendants).  Two days later, Plaintiff filed the instant Motion. (ECF No. 6). On December 14, 2023, the District Judge entered an order granting Plaintiff's *ex parte* application for a temporary restraining order, temporarily prohibiting Defendants from the wrongful use of the Louis Vuitton Marks. (ECF No. 15) (the "TRO").

Pursuant to the TRO, Plaintiff properly served Defendants with a copy of all filings in this matter, including the Complaint, Plaintiff's Motion, the witness declarations, the TRO, and the undersigned's Order setting the preliminary injunction hearing.[1]  *See* (ECF Nos. 19, 20, 21, 23). Nonetheless, only counsel for Plaintiff appeared and presented evidence at the January 17, 2024 hearing.  To date, Defendants have not responded to the Motion or appeared in this case, individually or through counsel.

## II.   FINDINGS OF FACT

At the preliminary injunction hearing, Plaintiff relied on the Huet declaration to establish its ownership of the Louis Vuitton Marks.  *See* Huet Decl. ¶ 4.  According to the evidence, the Louis Vuitton Marks have never been assigned or licensed to Defendants, and Defendants do not have, nor have they ever had, the right or authority to use the Louis Vuitton Marks for any purpose. Huet Decl. ¶ 9.

Prior to filing the Complaint, Plaintiff's counsel retained Invisible Inc, a licensed private investigative firm, to investigate Defendants' suspected sale of counterfeit versions of Plaintiff's branded products and document payment account data for receipt of funds paid to Defendants in connection with the sale of counterfeit versions of Plaintiff's branded merchandise.  *See* Huet Decl. ¶ 10; Burns Decl. ¶ 3; *see also* (ECF No. 6-3 ¶ 2) (Declaration of Virgilio Gigante) ("Gigante Decl.").  During its investigation, Invisible Inc accessed Defendants' Internet-based e-commerce stores and placed orders for various products from each Defendant, all products bearing one or more of the Louis Vuitton Marks, for delivery to addresses in the Southern District of Florida.  *See*

---

[1] The TRO authorized alternate service to Defendants by: (i) e-mail to their corresponding e-mail addresses and/or online contact form provided on the e-commerce store; (ii) e-mail to the registrar of record for each of the e-commerce stores; or (iii) any other means reasonably calculated to give notice as permitted by the Court.  (ECF No. 15 at 11).

Burns Decl. ¶ 4. In this way, Invisible Inc documented Defendants' financial account information, as identified in Schedule A of this Order. *Id.* At the conclusion of the process, Invisible Inc sent Plaintiff detailed web pages of Defendants' respective e-commerce stores for its review. *See* Huet Decl. ¶ 11; Burns Decl. ¶ 4; Gigante Decl. ¶ 2. Plaintiff's representative then visually inspected the various items appearing on the web pages and bearing the Louis Vuitton Marks and determined that the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* Huet Decl. ¶¶ 12-13.

Additionally, Plaintiff established that the Louis Vuitton Marks are vital to its business, as the trademarks represent a significant value to its overall business and associated image. Huet Decl. ¶ 8. As a result, Plaintiff suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time any third-parties, including Defendants, sell counterfeit and infringing goods bearing identical or substantially similar trademarks. Huet Decl. ¶ 8. Further, Plaintiff faces significant economic and logistical challenges in enforcing its trademark rights against the many unregulated and anonymous Internet-based e-commerce stores, like Defendants, selling counterfeit products, concealing their identities, and quickly abandoning and setting up new e-commerce stores to avoid detection and/or paying Plaintiff damages. Huet Decl. ¶¶ 17-20.

By benefiting from Plaintiff's advertising and marketing strategies while unlawfully using the Louis Vuitton Marks, Defendants are jointly obliterating the otherwise open and available marketplace space in which Plaintiff has the right to fairly market its goods and associated message. Huet Decl. ¶ 22. Thus, Defendants are causing individual, concurrent, and indivisible harm to Plaintiff and the consuming public by: (i) depriving Plaintiff of its right to fairly compete for space on the World Wide Web and within search engine results thereby reducing the visibility of Plaintiff's genuine goods; (ii) causing an overall degradation of the value of the goodwill

associated with the Louis Vuitton Marks by viewing inferior products in either the pre or post-sale setting; and/or (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brands via the Internet. Huet Decl. ¶ 23. Due to the availability of the non-genuine Louis Vuitton branded goods being offered for sale by Defendants, Plaintiff is highly likely to experience damage to its reputation and confusion among its consumers absent entry of an appropriate injunction. Huet Decl. ¶ 24.

As Defendants did not appear at the preliminary injunction hearing, the evidence summarized above remains uncontroverted.

### III. LEGAL ANALYSIS

#### A. General Principles

Federal Rule of Civil Procedure 65 authorizes the Court to enter a preliminary injunction where certain requirements are met. Fed. R. Civ. P. 65. To obtain a preliminary injunction, the moving party must demonstrate that: (i) there is a substantial likelihood of success on the merits of its claims; (ii) it will suffer irreparable injury if injunctive relief is not granted; (iii) the threatened injury to the moving party outweighs the harm the relief would inflict on the non-movant; and (iv) granting the injunction would serve the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). A plaintiff must establish all four elements. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (listing elements for a preliminary injunction in a Lanham Act case).

A preliminary injunction is "meant to keep the status quo for a merits decision." *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1290 (11th Cir. 2022) (citation omitted); *see Animaccord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 22-CV-

60956-KMM, 2023 WL 5625593, at *6 (S.D. Fla. July 13, 2023), *report and recommendation adopted,* No. 22-CV-60956-KMM, 2023 WL 5765888 (S.D. Fla. Sept. 7, 2023). At the preliminary injunctive stage, the Court may "rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co.*, 51 F.3d at 985 (citation omitted). Lastly, a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly satisfies the "burden of persuasion" as to all four elements. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Each factor is discussed below.

**B.      Likelihood of Success on the Merits**

To prevail on a claim for trademark infringement, Plaintiff must show that: (i) it has trademark rights in certain trademarks; (ii) Defendants' use of Plaintiff's trademarks is without authorization; and (iii) Defendants' use of Plaintiff's trademarks is likely to cause confusion, mistake, or deception. *See* 15 U.S.C. § 1114(1); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1130-31 (11th Cir. 2018); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J. concurring) (citations omitted) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a likelihood of confusion?"); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").

Based on the similarities between Defendants' products bearing the Louis Vuitton Marks and genuine products sold by Plaintiff and its authorized dealers, Plaintiff has shown a strong probability that consumers are likely to be confused through Defendants' advertisement, promotion, and/or distribution of goods bearing and/or using counterfeits, reproductions, or

6

colorable imitations of the Louis Vuitton Marks. Plaintiff will also likely establish that the products Defendants are selling and promoting for sale are unlicensed copies of Plaintiff's genuine products. Accordingly, Plaintiff has established the first element by demonstrating a substantial likelihood of success on the merits.

### C. Irreparable Harm

Next, to demonstrate irreparable harm, a movant must show "that the injury cannot be undone through monetary remedies." *Anago Franchising, Inc. v. CHMI, Inc*., No. 09-CV-60713, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009) (citation omitted). The irreparable injury claimed "must be neither remote nor speculative, but actual and imminent." *Id*. (quoting *Siegel*, 234 F.3d at 1176). Although economic losses alone will not justify a preliminary injunction, *Bellsouth Telecomms. v. MCIMetro Access Transmission Servs.*, 425 F.3d 964, 970 (11th Cir. 2005), the loss of customers and goodwill is considered an irreparable injury. *Ferrero v. Associated Materials*, 923 F.2d 1441, 1449 (11th Cir. 1991). Further, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 191 (11th Cir. 2005) (alteration in original) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998)).

Here, Plaintiff has satisfied its burden of demonstrating that immediate and irreparable injury will result to Plaintiff in that there is good cause to believe that: (i) Defendants own or control commercial Internet-based e-commerce stores operating under their seller names to advertise, promote, offer for sale, and sell products bearing Louis Vuitton counterfeit and infringing trademarks in violation of Plaintiff's rights; and (ii) more counterfeit and infringing products bearing and/or using the Louis Vuitton Marks will appear in the marketplace; (iii)

consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and (iv) Plaintiff may suffer loss of goodwill and reputation from Defendants' sales of counterfeit products bearing the Louis Vuitton Marks.

### D.  Balance of Potential Harms

To grant injunctive relief, the Court must weigh the potential harm to both Plaintiff and Defendants if the temporary injunction is granted. In this regard, Plaintiff has met its burden. First, the undersigned finds no legitimate hardship to Defendants if they were enjoined from engaging in allegedly infringing activities. *See Animaccord Ltd.*, 2023 WL 5625593, at *4. Second, Plaintiff has expended substantial time, money, and resources to develop the quality, reputation, and goodwill associated with its trademarks. Compl. ¶¶ 18-20; Huet Dec. ¶¶ 6-8. Thus, the potential harm to Defendants in restraining their trade in counterfeit goods is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of high-quality products if such relief is not granted.

### E.  Public Interest

Lastly, the Court considers the interest of the public in not being misled as to the origin, source, or sponsorship of trademarked products. *See Heron Dev. Corp. v. Vacation Tours, Inc.*, No. 16-CV-20683, 2017 WL 2895921, at *9 (S.D. Fla. Apr. 13, 2017), *report and recommendation adopted*, No. 16-CV-20683, 2017 WL 2901203 (S.D. Fla. May 26, 2017). Here, the public interest favors issuance of the preliminary injunction to protect Plaintiff's lawful trademark interests and protect the public from being misled or confused by the sale of Defendants' counterfeit goods.

### IV. BOND

Plaintiff has previously posted bond in the amount of $10,000, as damages to which Defendants may be entitled for a wrongful injunction or restraint. *See* (ECF No. 16). This bond is a reasonable and appropriate security in this case.

### V. RESTRAINT OF ASSETS

Lastly, Plaintiff requests that the Court enter an order limiting the transfer of Defendants' unlawfully gained assets. (ECF No. 6 at 15-17). Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of the Louis Vuitton Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962))). Equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *F.T.C v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

In light of the inherently deceptive nature of the counterfeiting business and the likelihood that Defendants have violated federal trademark laws, the Court has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

### VI. RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that Plaintiff's

request for a preliminary injunction contained in its Motion (ECF No. 6) be **GRANTED** as follows:

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of the Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Louis Vuitton Marks or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using Plaintiff's trademarks or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using Plaintiff's trademarks or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

2. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue, until further Order of the Court, the use of Plaintiff's trademarks, or any confusingly similar trademarks, on or in connection with all Internet-based e-commerce

stores owned and operated, or controlled by them, including those listed in Schedule A of this Order;

3. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue, until further Order of the Court, the use of Plaintiff's trademarks, or any confusingly similar trademarks, within domain name extensions, metatags, or other markers within website source code, from use on any web page (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet-based e-commerce stores owned or operated by any Defendant, including those listed in Schedule A of this Order;

4. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet-based e-commerce stores operating under the names listed in Schedule A and shall take all steps necessary to retrieve computer files relating to the use of the Internet-based e-commerce stores operating under the same that may have been deleted before the entry of this Order;

5. Upon Plaintiff's request, the privacy protection service for any of Defendants' Internet-based e-commerce stores for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those registrants;

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, or money transmitters, including but not limited to PayPal, Inc. ("PayPal"), and their related companies and affiliates shall immediately: (i) identify

all financial accounts and/or sub-accounts associated with the Internet-based e-commerce stores listed in Schedule A, the payment accounts, payees, merchant identification numbers, and/or the e-mail addresses identified on Schedule A, as well as any accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court;

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, or money transmitters, including but not limited to PayPal, and their related companies and affiliates, shall further, within 5 business days of receiving notice of this Order, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identifies the financial account(s) and sub-account(s) which the restrained funds are related to; and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) that have been restrained.  No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, or money transmitter, including but not limited to, PayPal, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court;

8. Any Defendant or any financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out herein;

9. This Order shall apply to the Internet-based e-commerce stores listed in Schedule A and any other seller identification names, associated e-commerce stores, or financial accounts

that are being used by Defendants to counterfeit Plaintiff's trademarks at issue in this action and/or unfairly compete with Plaintiff;

10. This Order shall not apply to any Defendant or associated e-commerce store dismissed from this case or as to which Plaintiff has withdrawn its request for a preliminary injunction;

11. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously posted bond in the amount of $10,000, as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of this Court. *See* (ECF No. 16). In the Court's discretion, the bond may be subject to increase should the amount of funds seized exceed $10,000;

12. Plaintiff shall serve copies of this Order and all future filings and orders on Defendants as directed by the District Judge through the means authorized in the TRO. (ECF No. 15 at 11);

13. In addition, to provide further notice of this proceeding, and all other pleadings, orders, and documents filed in this case, the owners, operators, and/or administrators of the financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to PayPal, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective Internet-based e-commerce stores; and

14. This Order shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated by the parties.

Within **14 days** after being served with a copy of this Report and Recommendation and any supplemental filing, any party may serve and file written objections to any of the above

findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on January 22, 2024.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:   U.S. District Judge Michael Moore
      All Counsel of Record

**SCHEDULE A**
**DEFENDANTS BY NUMBER, E-COMMERCE STORE NAME,**
**FINANCIAL ACCOUNT INFORMATION, WHATSAPP, AND E-MAIL ADDRESS**

| Def. No. | Defendant / E-commerce Store Name | Account Information: Payee | Account Information: Merchant ID | WhatsApp# | E-Mail Address |
|---|---|---|---|---|---|
| 1 | crewkicks.xyz | K mi luna | 8835YQCUJ45PQ | 4407877690846 | crewkickshop@gmail.com |
| 2 | getreadys.net | K mi luna | 8835YQCUJ45PQ | 4407877690846 | getreadysshop@gmail.com |
| 3 | mangomeee.net | K mi luna | 8835YQCUJ45PQ | 4407877690846 | mangomeeestore@gmail.com |
| 4 | mangosneakers.com | K mi luna | 8835YQCUJ45PQ | 4407877690846 | mangosneakersshop@gmail.com |
| 5 | redditsneakers.com | K mi luna | 8835YQCUJ45PQ | 4407877690846 | redditsneakerstore@gmail.com |
| 6 | tonysneaker.xyz | K mi luna | 8835YQCUJ45PQ | 4407877690846 | tonysneakersstore@gmail.com |